# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JUJUAN NORMAN, | ) | |
| | ) | CASE NO. 1:05-CV-1796 |
| Petitioner, | ) | |
| | ) | JUDGE PETER C. ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| MARGARET BRADSHAW, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Jujuan Norman, ("Norman"), challenges the constitutionality of his conviction in the case of *State v. Norman*, Case No. CR 411588.  Norman, *pro se*, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on July 15, 2005 with the United States District Court for the Northern District of Ohio.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends Norman's petition (Doc. No. 1) be DENIED.

## I.  Procedural History

**A.      Conviction**

The Cuyahoga County Grand Jury returned an indictment charging Norman with one count of felony murder and one count of having a weapon while under disability in violation of Ohio Revised Code ("O.R.C.") §§ 2903.02 and 2923.13.[1]  (Doc. No. 6-2, Exh. 1.)  Mike Jones and Sundiata Langford (collectively "co-defendants") also were charged in the same indictment with felony murder.  (Doc. No. 6-2, Exh. 1.)  The jury found Norman and his co-defendants guilty of murder under Ohio R.C. § 2903.02.  (Doc. No. 6-2, Exh. 6; Tr. 1611-1613.)  The trial court sentenced Norman to consecutive sentences totaling nineteen years to life.  (Doc. No. 6-2, Exh. 6.)

**B.      Direct Appeal**

On January 8, 2002, Norman appealed the trial court's judgment and sentence to the Court of Appeals.  (Doc. No. 6-2, Exh. 7.)  On November 7, 2002 (journalized November 18, 2002), the Court of Appeals rejected Norman's assignments of error except for his challenge to the sentencing.  (Doc. No. 6-7, Exh. 10.)  The Court of Appeals remanded for re-sentencing. (Doc. No. 6-7, Exh. 10.)

On February 12, 2003, the trial court re-sentenced Norman.  (Doc. No. 6-8, Exh. 11.)

On December 31, 2002, Norman appealed his conviction to the Ohio Supreme Court. (Doc. No. 6-8, Exh. 12.)  On April 2, 2003, the Ohio Supreme Court denied Norman leave to appeal and dismissed Norman's appeal as not involving any substantial constitutional question.

---

[1]  The second count of the indictment also charged co-defendant Langford with having a weapon while under disability.  (Doc. No. 6-2, Exh. 1.)

(Doc. No. 6-11, Exh. 15.)

**C.      Application to Reopen**

On April 29, 2003, Norman filed in the Court of Appeals an application for delayed

reopening pursuant to App. R. 26(B)(5).  (Doc. No. 6-11, Exh. 16.)  On January 20, 2004, the

Court of Appeals denied Norman's application to reopen as untimely, barred by *res judicata*, and

lacking in merit.  (Doc. 6-12, Exh. 18.)  On March 3, 2004, Norman appealed to the Ohio

Supreme Court.  (Doc. No. 6-13, Exh. 19.)  On May 26, 2004, the Ohio Supreme Court

dismissed Norman's appeal as not involving any substantial constitutional question.  (Doc. No.

6-13, Exh. 21.)

**D.      Petition for Post-Conviction Relief**

On September 23, 2002, while his direct appeal was pending in the Court of Appeals,

Norman filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21 and Crim. R. 35

alleging ineffective assistance of trial counsel.  (Doc. No. 6-13, Exh. 22.)  The court granted the

State's motion for summary judgment on January 7, 2003.  (Doc. No. 6-16, No. 24.)  On

September 4, 2003, the court filed its Findings of Fact and Conclusion of Law.  (Doc. No. 6-16,

Exh. 25.)

On October 3, 2003, Norman appealed the denial of his petition for post-conviction relief

to the Court of Appeals.  (Doc. No. 6-16, Exh. 26.)  On May 13, 2004, the Court of Appeals

affirmed the trial court's decision.  (Doc. No. 6-19, Exh. 29.)

On July 8, 2004, Norman appealed to the Ohio Supreme Court.  (Doc. No. 6-19, Exh.

30.)  On September 29, 2004, the Ohio Supreme Court declined jurisdiction to hear the case and

dismissed Norman's appeal as not involving any substantial constitutional question.  (Doc. No.

6-19, Exh. 32.)

**E.       Federal Habeas Petition**

On July 15, 2005, Norman, *pro se*, filed a Petition for Writ of Habeas Corpus, asserting

five grounds for relief:

> GROUND ONE: Petitioner was denied a fair trial due to
> prosecutorial misconduct in violation of the Fifth and Fourteenth
> Amendments to the United States Constitution.
>
> GROUND TWO: Petitioner was denied due process of law in
> violation of the Fifth and Fourteenth Amendments to the United
> States Constitution as there was insufficient evidence to establish
> his guilt of the crime charged.
>
> GROUND THREE: Petitioner was denied effective assistance of
> counsel in violation of the Sixth and Fourteenth Amendment to the
> United States Constitution due to counsel's critical and prejudicial
> errors during trial.
>
> GROUND FOUR: Petitioner was denied effective assistance of
> appellate counsel in violation of the Fourteenth Amendment to the
> United States Constitution due to appellate counsel's failure to
> raise the issue of ineffective assistance of trial counsel for failure
> to request the proper lesser included offense instruction.
>
> GROUND FIVE: Petitioner was denied effective assistance of
> counsel in violation of the Sixth and Fourteenth Amendments to
> the United States Constitution due to counsel's failure to subpoena
> a vital alibi witness.

(Doc. No. 1.)

## II.  Summary of Facts

The Ohio Court of Appeals summarized the facts underlying Norman's conviction as

follows:[2]

---

[2] Factual determinations by state courts are entitled to a presumption of correctness.  *See,
e.g., House v. Bell,* 283 F.3d 37 (6th Cir. 2002).

4

At trial, the evidence presented revealed that Warren Culbreath ("victim"), his sister, and two other boys were on the porch of his home on Kelton Avenue on the evening he was shot.  Testimony revealed that as the children were sitting on the porch, they noticed a white car stop at the corner of Kelton and East 120th Street, where a man named Mr. Hill was stopped on his bicycle chatting with two friends who were walking a baby in a stroller.  Testimony revealed that words were exchanged between the occupants of the white car and Mr. Hill.  The occupants of the car had asked Mr. Hill, are you Rockland?"  There was further testimony that the occupants of the car stated to Mr. Hill, "You all killed my nigger."  The question and comment alarmed Mr. Hill, who immediately dropped his bike and ran west down Kelton Avenue.  Mr. Hill testified that he thought the men in the car were referring to the fact that his friend had killed a boy two weeks prior.  He believed the occupants of the car were friends with the boy who was killed and wished to retaliate.  The white car followed Mr. Hill down Kelton and passed the victim's house.  As he ran toward 11811 Kelton, Mr. Hill was hollering "dude's coming."

Two of the boys on the victim's porch walked a couple of doors down to try to see what was going on, until they realized that the white car had screeched while fish-tailing to turn back around.  At that point, the boys ran up to their porch.  While on the porch, they saw the white car run over Mr. Hill's bike before continuing past their house.

At the same time, defendants Langford, Jones, Norman and a friend, Mr. Smith, were on defendant Langford's grandfather's porch at 11811 Kelton.  At the point when the white car abruptly turned around, the three defendants went into the house, while Mr. Hill ran up the driveway to the back of the lot and began to jump the fence.  While maneuvering over the fence, Mr. Hill heard gunfire, at which point, he promptly proceeded over the fence.

When the kids on the porch heard the shooting, the victim's sister attempted to get all of the kids inside the house.  All three witnesses who testified to being on the porch that night stated they did not see any occupant in the white car possess or fire a gun that evening.  There was, however, conflicting testimony regarding whether the boys in the white car fired at defendants.

The victim died after running in the house and attempting to flee to safety upstairs.  A stray bullet came through the wall of the house, entered his back, traveled up his body, through his brain and rested in his skull.  Police determined that the bullet that killed the victim came from the direction of 11811 Kelton Avenue.

In their statements to police, each defendant admitted to firing weapons in the direction of the white car that evening from the general direction of 11811 Kelton.

5

> However, none of the defendants admitted to firing a weapon capable of firing a 7.62 round of ammunition, which is what ultimately killed the victim.  In these statements, all of the defendants admitted that they thought the people in the white car were "Bloods" who were out to avenge the death of their leader at the hands of "Rockland."  The defendants claimed that they shot at the white car in self-defense.

(Doc. No. 6-7.)

### III.  Procedural Default

Respondent asserts that ground one, relating to prosecutorial misconduct, and ground four, relating to ineffective assistance of appellate counsel, are procedurally defaulted and should be dismissed.

Procedural default occurs when the petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state law ground exists for upholding the conviction or sentence.  *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991).  The denial of an appeal for non-compliance with the time limit prescribed by the state is an adequate and independent state ground.  *Id.* at 751.

The procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Specifically, the Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule.  First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it.  *Id.* at 138.  Second, the court must decide whether the state courts actually enforced

6

its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")

Under the second prong of the *Maupin* analysis, the court must actually rely on the procedural bar as an independent basis for its disposition of the case. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (The last state court rendering a reasoned judgment on the matter must "clearly and expressly" state that its judgment rests on such a procedural bar for the doctrine of procedural default to apply). Further, review by a state court of an otherwise procedurally defaulted claim to determine whether the error, if any, constituted a manifest miscarriage of justice does not revive the defaulted claim for purposes of federal habeas corpus review. *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) ("manifest injustice" review by state court of defaulted claim does not

7

constitute waiver of the default); *see also Seymour v. Walker*, 224 F.3d, 542, 557 (6th Cir. 2000) (Court of Appeals' plain error review does not constitute waiver of state procedural rules).

**A.      Ground One: Prosecutorial Misconduct and Denial of a Fair Trial**

In his first ground for relief, Norman alleges that he was denied his right to a fair trial because of prosecutorial misconduct.  Specifically, Norman argues that the prosecutor: (1) during *voir dire*, "repeatedly mentioned gangs and referred to [Norman] and his co-defendants as gang members;" (2) despite the lack of any evidence, repeatedly implied Norman and his co-defendants were gang members; (3) improperly appealed to the jurors' emotions; and (4) misstated the law by stating "[l]egally, it doesn't make a hoot of difference whether the shot that killed [decedent] came out of that car or the shot that killed him came from [the defendants]." (Doc. No. 1; Tr. 1529.)

Ground one is procedurally defaulted because trial counsel failed to object to the alleged hearsay and the prosecutor's closing argument.  Pursuant to Ohio's contemporaneous objection rule, a party can preserve an issue for appellate review only if the party makes an objection at trial.  *State v. Powers*, 667 N.E.2d 32, 106 Ohio App.3d 696 (Ohio Ct. App. 1995).  The Court of Appeals held that because Norman's trial counsel did not object to the State's alleged improper statements, Norman's claims regarding these matters were not reviewable on the merits and were subject merely to a plain error analysis pursuant to Crim. R. 52(B).[3]  (Doc. No. 6-7, Exh. 10 at

---

[3] Ohio courts invoke "[t]he plain error rule ... only in exceptional circumstances to avoid a miscarriage of justice."  *State v. Long*,  372 N.E.2d 804, 53 Ohio St.2d 91 (Ohio 1978), *quoting United States v. Rudinsky*, 439 F. 2d 1074, 1076 (6th Cir. 1971).  Plain error is established if, absent the error, the outcome of the trial clearly would have been otherwise.  *Id*. at 808.  Using this analysis, the appellate court found that the prosecutor's statements were not improper, and that Norman had failed to demonstrate how these statements prejudiced his defense to an extent that would constitute plain error.

5.)  A state court's dismissal of a claim for the reason that counsel failed to lodge a timely objection is an "adequate and independent" state ground.  *Scott*, 209 F.3d at 869.  Moreover, the appellate court's plain error review of the defaulted claims does not undercut the court's reliance on the state procedural rule in dismissing the claims.  *See Scott*, 209 F.3d at 868.  As such, Norman procedurally defaulted his claims regarding the prosecutor's comments.

In an attempt to show cause for this default, Norman claims that his trial counsel was ineffective for failing to object to the prosecutor's misconduct during trial.  However, as this Court discusses below in reviewing the Court of Appeals' denial of Norman's ineffective counsel claim, Norman has not met the test for ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  *See infra* Section IV. B.  Accordingly, Norman has not established cause for this default or prejudice stemming from the claimed error.

Therefore, Norman's first ground for relief is procedurally defaulted and should be dismissed.

**B.**     **Ground Four: Ineffective Assistance of Appellate Counsel**

In his fourth ground for relief, Norman alleges that he was denied his right to effective assistance of appellate counsel.  Specifically, Norman argues that his appellate counsel failed to request jury instructions on the lesser included offenses of murder.  (Doc. No. 6-11, Exh. 16.)

Ohio Appellate Rule 26(B) ("Rule 26(B)") provides, in relevant part:

(1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within *ninety days* from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

(Italics added.)  Norman did not file his application to reopen his appeal under Rule 26(B) until

9

April 29, 2003 – over 150 days after the journalization of the appellate court's judgment.  Thus, under the first step of the *Maupin* test, Rule 26(B) constitutes an applicable procedural rule and Norman failed to follow it.  The second step of the *Maupin* test also is satisfied as the state actually enforced its procedural sanction.  The Court of Appeals found that Norman's failure to follow Rule 26(B) and his corresponding failure to demonstrate good cause to excuse his compliance with Rule 26(B) is "sufficient basis for denying the application for rehearing."  (Doc. No. 6-12, Exh. 18.)[4]

The third step of the *Maupin* test also is satisfied, as the Court finds that Rule 26(B) constitutes an adequate and independent ground that is regularly and consistently applied by Ohio courts.  *See Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (Ohio App. R. 26(b) was independent and adequate ground regularly applied in the 1st Dist of Ohio); *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002); *Williams v. Bagley*, 166 Fed. Appx. 176, 180 (6th Cir. 2006) ("This court has previously held that Rule 26(B) has satisfied this test since at least 1996."); *contra Buell v. Mitchell*, 274 F.3d 337, 350 (6th Cir. 2001) (procedural bar of Rule 26(B) applied to petitioner's claims was not "firmly established and regularly followed" at the time of the relevant decisions in this case) (citations omitted).

Finally, the *Maupin* test requires Norman to demonstrate "cause" for failure to follow the procedural rule and actual prejudice stemming from the alleged constitutional error.  Rule 26(B),

---

[4] In addition, the Court of Appeals found that Norman's request for reopening was barred by *res judicata* and, alternatively, denied the claim on the merits.  The denial of the claim on the merits as an alternative ground does not undermine the state court's enforcement of the procedural bar.  *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004) ("By addressing the prejudice of an ineffectiveness claim a court does not bind itself into ruling on the claim's underlying merits."), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).

10

in essence, incorporates the last prong of the *Maupin* test, as the appellate rule allows the ninety day requirement to be overlooked where "the applicant shows good cause for filing at a later time."  Norman avers that he has shown good cause, because he was at the county jail for two and a half months and did not have the facilities for legal research to prepare his Rule 26(B) request in the allotted ninety day period.  (Doc. No. 6-11, Exh. 16.)  Norman's allegation, however, only accounts for 75 days of the over 150 days that his application was overdue.  Norman's excuses for delay are not sufficient to show cause.  *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (holding that a petitioner failed to establish cause for his procedural default despite alleging a sudden departure of his attorney, ignorance with regarding legal and procedural requirements, *pro se* status, and limited access to a law library); *Johnson v. Wilson*, 2006 U.S. App. LEXIS 15479at **7-8 (6th Cir. June 16, 2006); *Monzo*, 281 F.3d at 578 ("Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.")  Accordingly, Norman has not established cause for this default.

Moreover, even if Norman could show cause to excuse his failure to comply with Rule 26(B), Norman has not met the test for ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Norman has not demonstrated that his counsel's performance was so deficient as to cause prejudice that reasonably would have changed the outcome of his appeal.  *See infra* Section IV. C.

As ground four is procedurally defaulted and Norman has not shown cause or prejudice from the procedural default, this claim should be dismissed.

## IV.  Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Norman filed his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

12

indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.")  The "unreasonable" requirement is a high bar.  *See Ruimveld*, 404 F.3d at 1010.

## A.      Ground Two: Insufficient Evidence of Guilt

Norman argues that the evidence was insufficient to support his murder conviction. Norman alleges there is no evidence that he either: (1) fired the fatal shot; or (2) acted in complicity with the person who fired the fatal shot.

The Court of Appeals rejected Petitioner's arguments.  Although Norman argued that the evidence at trial was that he had fired a .22 rifle or a .38 rifle, neither of which is capable of firing a 7.62 pellet such as the one that killed the victim, the appellate court found these facts insignificant.  The Court of Appeals reasoned that a jury could have convicted Norman of

13

murder even if he did not fire the lethal shot based on the doctrine of transferred intent and the proposition that aiders and abetters are liable for criminal acts of a principal.  (Doc. No. 6-7, Exh. 10.)  Therefore, the state only had to prove Norman aided and abetted the murder and did not have to prove that he fired the fatal shot.  *Id*.  The appellate court cited the following as sufficient evidence of guilt: Norman, as well as his co-defendants, admitted to firing at the white car as it passed; Norman's claim of self-defense was not corroborated as the evidence showed that he did not stay inside the house but engaged in the gunfire; and Norman admitted to shooting his gun from the location/direction from which the fatal bullet had been fired.  *Id*.  The appellate court found that while none of the defendants intended to harm the victim, their intent to harm those in the white car was transferred to the victim.  *Id*.

   In reviewing a conviction for sufficiency of the evidence, the Court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia,* 443 U.S. 307, 318 (1979) (footnote omitted).  In making this determination, a court does "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury."  *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001) (internal quotation and citation omitted).  Rather, a court views "the evidence in the light most favorable to the prosecution" and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.

   Pursuant to Ohio's felony murder statute, R.C. § 2903.02(B) (2001), under which Norman was charged and convicted, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a

felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of

the Revised Code."

> With respect to felony murder, two opposing theories of criminal responsibility
> exist.  Under the "agency theory," the State must prove that either the defendant
> or someone acting in concert with him, an accomplice, killed the victim and that
> the killing occurred during the perpetration of and in furtherance of the
> underlying felony offense.  *Moore v. Wyrick* (8th Cir. 1985), 766 F.2d 1253; *State
> v. Chambers* (1977), 53 Ohio App. 2d 266, 373 N.E.2d 393.  Under the
> ***"proximate cause theory," it is irrelevant whether the killer was the defendant,***
> ***an accomplice, or some third party*** such as the victim of the underlying felony or
> a police officer. Neither does the guilt or innocence of the person killed matter.
> ***Defendant can be held criminally responsible for the killing regardless of the***
> ***identity of the person killed or the identity of the person whose act directly***
> ***caused the death, so long as the death is the "proximate result" of Defendant's***
> ***conduct*** in committing the underlying felony offense; that is, a direct, natural,
> reasonably foreseeable consequence, as opposed to an extraordinary or surprising
> consequence, when viewed in the light of ordinary experience. *Id*; *State v.
> Bumgardner*, 1998 Ohio App. LEXIS 3856 (Aug. 21, 1998); *State v. Lovelace*
> (1999), 137 Ohio App. 3d 206, 738 N.E.2d 418.

*State v. Dixon*, 2002-Ohio-541, 2002 Ohio App. LEXIS 472 at *14 (Ohio Ct. App. Feb. 8, 2002)

(emphasis added); *accord State v. Ervin*, 2006-Ohio-4498 at ¶25, 2006 Ohio App. LEXIS 4405

(Ohio Ct. App. Aug. 31, 2006) ("[T]he evidence revealed that there was more than one cause of

[the victim's] death.  The intervening act of [an FBI agent] shooting at the driver of the vehicle

was the most immediate and obvious cause of [the victim's] death, but not the sole and exclusive

cause.  Had [Defendants] not kidnapped [the victim] and demanded a sum of money or drugs for

his return, [the victim] would not have been shot.")

Thus, the Court will uphold Norman's conviction if the evidence, viewed in the light

most favorable to the prosecution, was such that a reasonable jury could have found the essential

elements of the crime beyond a reasonable doubt.  There is sufficient evidence to support a

finding that, under the "agency theory," Norman, acting in concert with his co-defendants, fired

15

the weapon that killed the victim while engaged in a gun battle with others.  Norman and his co-defendants all admit to firing a weapon towards the occupants of the white car from in front of 11811 Kelton Avenue.  (Tr. 1234-1256.)  The victim was killed by a 7.62 round of ammunition. (Tr. 1173-1174.)  The shell casing of a 7.62 bullet was found on the porch of 11815 Kelton next door to where Norman and his co-defendants admit to discharging weapons.  (Tr. 1149-1151.) Though Norman claimed to be firing in self-defense, there was testimony from a police detective that there were no bullet holes in either the house at 1181 Kelton or 11815 Kelton.  (Tr. 1225-1226.)  Also, as the appellate court noted, "the evidence did not demonstrate that [Norman] stayed in the house for safety, rather, that he quickly returned outside to cross-fire."  (Doc. No. 6-7, Exh. 10 at 13.)  Based upon these facts, a rational trier of fact reasonably could conclude that Norman or his co-defendants, acting in concert, fired the gun that killed the victim and that Norman was not acting in self-defense.

The same evidence is also sufficient to support a finding that, under the "proximate cause theory," Norman, acting in concert with his co-defendants, instigated a gun battle with the occupant's of the white car whose return fire caused the death of the victim.  The jury reasonably could find that Norman and his co-defendants were aggressors, were not in danger of imminent bodily harm, and/or had violated a duty to retreat by returning to the porch and opening fire after having entered the house, and, therefore, were not privileged to use self-defense.[5]  While there is

_____

[5]  Pursuant to 4-411 Ohio Jury Instructions § 411.31, "In order to establish a claim of self-defense, the defendant must prove: (A) he/she was not at fault in creating the situation giving rise to (describe the event in which death or injury occurred); and (B) he/she had reasonable grounds to believe and an honest belief that he/she was in (imminent) (immediate) danger of death or great bodily harm, and that his/her only means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force; and (C) he/she had not violated any duty to (retreat) (escape) (withdraw) to avoid

16

evidence from Norman and the co-defendants that the people in the white car fired first, this evidence is not corroborated by other witnesses. The jury also rationally could find that Norman and his co-defendants proximately caused the victim's death as it was reasonably foreseeable that a felonious assault on the occupants of the white car, whom they either knew or believed were armed, would result in a gun battle that could likely result in death or injury to nearby residents.

Clearly, the evidence presented constitutes sufficient evidence for a reasonable jury to find Norman guilty of felony murder. As such, the Court of Appeals' decision was not an unreasonable application of, or contrary to, clearly established federal law.

**B.      Grounds Three and Five: Ineffective Assistance of Trial Counsel**

Norman claims that he was denied the effective assistance of trial counsel because such counsel: (1) failed to subpoena a vital alibi witness; and (2) made critical and prejudicial errors during trial.

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's conduct fell so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the proceeding unfair. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Deficiencies in counsel's performance must "be prejudicial to the defense in order to

_____

the danger."

17

constitute ineffective assistance." *Id.* at 692.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  That is to say, it must be demonstrated that counsel's performance "caused the defendant to lose what he otherwise would probably have won" and that it was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland,* 466 U.S. at 689;  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Vague or conclusory allegations are insufficient to establish the prisoner's burden that counsel's performance was deficient and that the defendant suffered prejudice as a result.  *See United States v. Cronic*, 466 U.S. 648, 666 (1984) (ineffective assistance of counsel claims can only be made out by pointing to specific errors made by counsel).

### 1.    Failure to Subpoena an Alibi Witness

Norman claims his trial counsel was ineffective because counsel failed to subpoena or even interview a vital "alibi witness," Daryll Martin ("Martin"), who allegedly saw the occupants of the white car shoot directly at the victim's house.  (Doc. No. 1-1).  However, according to Martin's affidavit attached to Norman's petition, Martin would have testified that he saw the three defendants running in the opposite direction seconds before the occupants of the

white car began firing in the direction of 1425 East 120th Street.[6]  (Doc. No. 6-13, Exh. 22.)

Such evidence of a retreat to safety can reasonably be interpreted as inconsistent with Norman's

self-defense argument.

Norman's allegation that his counsel never interviewed Martin has not been

substantiated, as Norman does not even aver as much in the affidavit he submitted in support of

his Petition for Post-Conviction Relief, though Norman did testify that Martin was on his witness

list.[7]  Martin even was subpoenaed by both sides, that is by the state and by co-defendants

Langford and Jones.  (Doc. No. 6-14, Exh. 23.)  Further, although he was never called to testify,

Martin was listed as a potential witness by both the state and by the defense.  (Doc. No. 13, Exh.

22.)  In his affidavit, Martin stated that he was interviewed by counsel for one of Norman's co-

defendants.  (Doc. No. 6-13, Exh. 22.)  Based on the Court's review of the trial proceedings,

although each defendant had his own counsel, there appears to be some level of coordination

and/or cooperation between counsel for Norman and counsel for his co-defendants.

In addressing Norman's Petition for Post-Conviction Relief, the common pleas court

found that Martin's affidavit directly conflicted with the statements of Norman and his co-

defendants and was inconsistent with their theory of self-defense.  The Court further found that

Norman's conviction was supported by substantial, credible evidence and Martin's testimony

would not have led to a different result.  (Doc. No. 6-16, Exh. 25.)

---

[6]  Martin's testimony is not entirely clear.  The contents of his affidavit do not clarify
whether the occupants of the white car were en route to 11811 Kelton or whether
they were driving away from Kelton Avenue.

[7]  This line of argument was not presented upon direct appeal, but was first raised in
Norman's Petition for Post-Conviction Relief.  (Doc. No. 6-13, Exh. 22.)

19

A counsel's failure to investigate and present witnesses at trial results in deficient performance.  *See Cobble v. Smith*, 154 Fed. Appx. 447, 452 (6th Cir. 2005) (counsel's failure); *Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005) ("Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client."); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) ("We note at the outset that a number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where, as in this case, a defendant's trial counsel fails to file a timely alibi notice and/or fails adequately to investigate potential alibi witnesses.")  However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 695.

Norman's claim lacks merit because: (1) Norman has not shown that his counsel failed to investigate or lacked knowledge of the substance of Martin's statements; (2) counsel for Norman's co-defendants had subpoenaed Martin but chose not to call him at trial; (3) potential discrepancies between the statements of defendants and Martin's affidavit strongly suggests the decision to refrain from calling Martin reflects the trial strategy of defendants' counsel; and (4) the fact that both the state and defense subpoenaed Martin suggests that Martin's testimony may have been favorable to the prosecution as well.  The amount of information before the Court with respect to the defense's version of events, given the brevity of the defendants' statements and Martin's affidavit, is scarce in comparison to that available to Norman's trial counsel.  Given the

20

strong legal presumption in favor of counsel having rendered adequate assistance and the paucity of specific information before the Court, it is imprudent to second guess counsel's trial strategy. *See Middleton v. Roper*, 455 F.3d 838, 848-849 (8th Cir. 2006) ("[W]hile presenting inconsistent theories or defenses may be plausible in some cases, at other times it may not be sound trial strategy [and we] give great deference to counsel's informed strategic decisions, noting we 'must resist the temptation to second-guess a lawyer's trial strategy.'") (citations omitted).

The decision to refrain from calling Martin as a witness falls into the category of trial strategy.  Norman has not demonstrated that his counsel's performance was deficient or that he was prejudiced by his counsel's failure to call Martin as a witness.

### 2.      Failure to Seek Severance of Trial and Right to Confrontation

Norman claims that his counsel was ineffective due to counsel's failure to move for a severance of his trial from his co-defendants and that he was denied the right to confront witnesses against him because his co-defendants did not testify during trial.[8]  He fails to distinguish the two arguments.  The Court will address each in turn.

Motions to sever create an issue of case management.  "[A]ny errors alleged in the management of a state criminal trial do not deny the defendant due process of law, *see, e.g., Willard v. Pearson*, 823 F.2d 1141, 1149 (7th Cir. 1987), unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair, *see, e.g., Dudley v. Duckworth*, 854 F.2d 967, 972 (7th Cir. 1988)."  *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988).  The trial court has considerable discretion on the issue of severance:

---

[8]  All of the co-defendants, including Norman, gave statements to the police that were read at trial and admitted into the record.  (Tr. 1234-1257.)

In reviewing state court determinations on severance, we will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair. . . .  Joint trials may be found fundamentally unfair if codefendants present true "mutually antagonistic defenses" or if the "actual conduct" of the defense of one defendant prejudices another.

*Madyun v. Young*, 852 F.2d 1029, 1033-34 (7th Cir. 1988) (citations omitted); *see also United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002); *Payne v. Bobby*, 2006 U.S. Dist. LEXIS 7805 at **29-30 (S.D. Ohio 2006).

The Sixth Circuit has discussed the issue in relation to Rule 14 of the Federal Rules of Criminal Procedure:

For the sake of promoting efficiency and avoiding the potential for inconsistent verdicts, joint trials of defendants who are indicted together are actually encouraged rather than discouraged. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *see also* Fed.R.Crim.P. 8(b) (stating that "[t]wo or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses").  This is especially true when two defendants are accused of participating in a conspiracy or joint scheme. *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir.1992).

*Cope*, 312 F.3d at 780.

"Severance is required 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *U.S. v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002), *quoting Zafiro*, 506 U.S. at 539.

Thus, even if Norman's counsel had moved to sever the trial, there is no assurance that the request would have been granted as the ultimate decision rested with the trial judge, who enjoyed considerable discretion.  None of the defendants involved in Norman's case had mutually antagonistic defenses.  All three defendants argued that they acted in self-defense when

22

they fired upon the occupants of the white car and no defendant ever suggested that one of the other co-defendants was responsible for the death of the victim.  In fact, the circumstances of this case particularly lend itself to the joint trial of Norman and his co-defendants.  Counsel's failure to move for a severance of the trial cannot reasonably be construed as resulting in ineffective assistance of counsel where, based upon the facts, such a motion was unlikely to be granted.

The Court now addresses the confrontation issue.  The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The purpose of the Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999).  Such testing is not possible where the government endeavors to present the hearsay statements of a non-testifying co-defendant through the testimony of a witness.  *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *Bruton v. United States*, 391 U.S. 123, 137 (1968).  Until recently, however, any out-of-court testimonial statement made by an unavailable declarant could be admitted provided that the judge found that it bore adequate indicia of reliability.  *See, e.g., Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  The Court in *Roberts* maintained that "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."  *Id.*  Applying such logic, the Supreme Court held that the statement of a non-testifying declarant could be used against a defendant at trial so long as the declarant was unavailable and the statement was reliable.  *Id.*; *see also U.S. v. Pugh*, 405

23

F.3d 390, 398 (6th Cir. 2005).

In 2004, however, the Supreme Court limited the rule established in *Roberts* as it relates to the admissibility of hearsay testimony.  *See Crawford v. Washington*, 541 U.S. 36 (2004).  In *Crawford*, the Court examined the "bedrock procedural guarantee" of an accused's right to confront witnesses who testify against him.  The Court in *Crawford* struck down an evidentiary ruling that dispensed with a defendant's right of confrontation simply because the challenged testimony had been found reliable by a judge.  The Court made it abundantly clear that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  *Id.* at 68.  The Court found that testimonial statements of witnesses absent from trial may be admitted (1) only where the declarant is unavailable, and (2) only where the defendant has had a prior opportunity to cross-examine the witness.  *Id.* at 59.

In Norman's case, all three defendants, including Norman, gave statements to the police.  The co-defendants admitted to shooting weapons on the night the decedent died and also stated that Norman had fired a weapon as well.  Norman gave a similar statement to the police and admitted he had fired a weapon at the white car.  The statements of the co-defendants are consistent with Norman's statement and actually buttress Norman's version of the facts.

Although Norman has correctly identified a technical violation of his right to confront witnesses, the error was harmless as he has not been deprived of a fundamentally fair trial.  "Confrontation Clause cases are subject to harmless error analysis on habeas review."  *Robinson v. Stegall*, 48 Fed. Appx. 111, 113 (6th Cir. 2002), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see also O'Neal v. McAninch*, 513 U.S. 432 (U.S. 1995) ("When a federal habeas

24

court finds a constitutional trial error and is in grave doubt about whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict,' the error is not harmless, and the petitioner must win..."); *Norris v. Schotten*, 146 F.3d 314, 330-331 (6th Cir. 1998) (habeas relief only will be granted where the error rises to the level of being a denial of fundamental fairness).

Given the congruity of the statements by Norman and his co-defendants, the presentation of the co-defendants' statements to the jury must be considered harmless.  Where a jury hears testimony that essentially reiterates a petitioner's statement without adding any additional damaging testimony, no substantial and injurious effect or influence is injected into the trial. Therefore, Norman's confrontation clause claim does not provide a sufficient basis for granting habeas relief.

The failure of Norman's counsel's to move for a severance did not singularly, or in combination with the other alleged errors, result in ineffective assistance of counsel, nor did the joint trial of the defendants and admission of his co-defendants' statements render the trial fundamentally unfair.

### 3.      Failure to Give an Opening Statement or Cross-Examine Several Witnesses

Norman claims that his counsel was ineffective due to counsel's failure to give an opening statement and his failure to examine several prosecution witnesses.  Norman states that these failures on the part of counsel gave the jury the impression that Norman was surrendering, and the failures were, therefore, prejudicial.

The Sixth Circuit has held that "[a]n attorney's decision not to make an opening

statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'"  *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004), *citing United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457 (9th Cir. 1985); *Malicoat v. Mullin*, 426 F.3d 1241, 1260 (10th Cir. 2005) (failure to give opening statement was part of trial strategy and did not constitute ineffective assistance of counsel); *Mitchell v. McKune*, 118 Fed. Appx. 410, 412 (10th Cir. 2004) (affirming district court's finding that "defense counsel's waiver of an opening statement is a strategic decision and does not constitute deficient performance.")

Where a Court can only speculate as to whether the outcome of a trial would have been different had a petitioner's counsel cross-examined a witness, there is an insufficient showing of prejudice under *Strickland*.  *See Poindexter v. Mitchell*, 454 F.3d 564, 572-73 (6th Cir. 2006); *Moss v. Hofbauer*, 286 F.3d 851, 860-61 (6th Cir. 2002) (counsel's decision to refrain from cross-examining witnesses did not result in an actual breakdown in the adversarial process, and therefore, petitioner had to demonstrate prejudice).

In an instructive case from another circuit, a petitioner, who complained of ineffective assistance of counsel because counsel failed to cross-examine five prosecution witnesses, failed to indicate how this alleged deficiency prejudiced his defense.  *See Hess v. Maass*, 1994 U.S. App. LEXIS 19627 at *2 (9th Cir. 1994).  Therein, the petitioner did not specify what testimony should have been elicited in cross-examination and, instead, argued generally that failure to cross-examine caused a breakdown in the adversarial process.  *Id*.  The Ninth Circuit found that "[b]ecause [petitioner] has failed to show actual prejudice resulting from counsel's actions, [his] claim must fail.  *Id*.

Norman fails to make a cogent argument as to how his trial counsel's strategic decisions

to refrain from giving an opening statement or cross-examine certain witnesses resulted in prejudice.  Norman only makes the conclusory statement that his "[t]rial counsel's performance implied surrender to the jury."  (Doc. 1-1.)  While the Court declines to speculate as to the underlying reasons behind counsel's tactical decisions, it is worth noting that the attorneys of Norman's co-defendants gave opening statements that revealed a case strategy or position remarkably similar to the one espoused by Norman in his briefs.  (Tr. 507-517.)  Norman also gives no indication as to what testimony his counsel should have tried to elicit on cross-examination and how his failure to do so resulted in prejudice.

For the foregoing reasons, Norman's claim of ineffective assistance of trial counsel based on a failure to give an opening statement and failure to cross-examine some witnesses is without merit.

### 4.      Failure to Object to Prosecutorial Misconduct

Although ground four is procedurally defaulted for the reasons set forth in Section III. A of this Report and Recommendation, *supra*, the Court will address this ground on the merits as an alternative ground.  Specifically, Norman claims that his counsel failed to object when: (1) the prosecutor repeatedly mentioned gangs and referred to defendants as gang members during *voir dire*; (2) the prosecutor asked the jury to picture themselves finding one of their children shot dead; and (3) the prosecutor opined during his closing statement that "[l]egally it doesn't make a hoot of a difference whether the shot that killed [the victim] came out of that car or ... from [the defendants]."  (Tr. 497, 1529.)  The failure of Norman to object to these statements can only amount to deficient assistance of counsel if the prosecutor's actions were legally objectionable.  *See, e.g., Bradley v. Birkett*, 2006 U.S. App. LEXIS 21510 at *17 (6th Cir. Aug.

21, 2006) (finding trial counsel's failure to object to alleged prosecutorial misconduct cannot be constitutionally deficient where the prosecutorial misconduct claim lacks merit); *see also Slagle v. Bagley*, 2006 U.S. App. LEXIS 20240 at *29 (6th Cir. Aug. 8, 2006) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."), *quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The appellate court found the prosecutor's references to gang activity was not improper, as his theory of the case was that the shooting was the product of gang retaliation.  The appellate court noted that, "the trial court did not abuse its discretion in allowing the prosecutor to question potential jurors regarding their perceptions of gang related activity [and] [t]he prosecutor had a good faith basis for the questions."  (Doc. No. 6-7, Exh. 10.)  Each of the defendants gave statements that strongly suggested the shooting that occurred between the co-defendants and the occupants of the white car was gang-related and had something to do with the previous killing of a young man in the neighborhood.  (Tr. 1240, 1250, 1255.)  The Court agrees that the prosecutor's *voir dire* questions were not improper under the circumstances and, therefore, Norman's counsel was not deficient in failing to object to them.

During a narrative of events given during his opening statement, the prosecutor stated the following:

> Before [the victim's father finds a bullet hole in the wall], picture in your mind walking to your front room of your front hallway to find out if any of the children are shot and discovering one of them is.  What [the victim's father] does is get on the phone, calls the police, calls 911, and the police are called.  They arrive, I believe they get the call or the assignment or arrive at 9:58.  So we know that this is all over.

(Tr. 497.)

28

Norman argues that the above statement was made to remove the jurors' objectivity. Norman has not identified any instances of repeated emotional appeals.  Again, the issue before this Court is not necessarily whether the prosecutor's statement was proper, but whether Norman was thereby deprived of a fair trial.  The prosecutor's isolated statement, while arguably appealing to emotions or sentiment, was not unreasonably inflammatory and was not part of a pervasive pattern.  The statement, given during the course of a rather staid narrative of events, did not deprive Norman of a fundamentally fair trial.

Lastly, the failure of Norman's counsel to object to the prosecutor's closing statement was neither deficient nor prejudicial.  As discussed in Section IV. A, Norman could be found guilty of felony murder by way of an "agency" theory or a "proximate cause" theory.  Therefore, the prosecutor's statement that "legally it doesn't make a hoot of a difference" whether the bullet came from the defendants or the occupants of the white car is, for the most part, accurate if not necessarily an articulate statement of the law.  Moreover, the jury is instructed on the law by means of the jury instructions given at the close of trial.  Consequently, Norman's counsel was not ineffective by failing to object to the prosecutor's statement, and Norman cannot demonstrate any prejudice resulting from hearing a statement that was substantially accurate and that was clarified by the jury instructions.

For the foregoing reasons, Norman's argument that he was deprived of effective assistance of counsel based upon his attorney's failure to object to alleged prosecutorial misconduct is not well taken.

29

**C.      Ground Four: Ineffective Assistance of Appellate Counsel**

Although ground four is procedurally defaulted for the reasons set forth in Section III. B of this Report and Recommendation, *supra*, the Court will address this ground on the merits as an alternative ground.

Norman asserts that he was denied effective assistance of appellate counsel, because appellate counsel, on direct appeal, failed to argue ineffective assistance of trial counsel. Specifically, Norman argues that his appellate counsel neglected to raise trial counsel's failure to request jury instructions on alleged lesser included offenses of murder, such as manslaughter and involuntary manslaughter and that his trial counsel's failure to ask for these instructions resulted in the ineffective assistance of trial counsel.  Norman is attempting to fuse the failure of appellate counsel to the failure of his trial counsel.  Norman's ineffective assistance of appellate counsel claim, therefore, can only be considered if trial counsel rendered ineffective assistance.

The transcript shows that, while discussing jury instructions with the trial court, counsel for one of Norman's co-defendants stated that, "*[w]e* discussed with ***our clients*** the concepts of reckless and negligent homicide .... If you look at the sections reckless and negligent homicide I think [a jury instruction] would be appropriate." (emphasis added) (Tr. 1424.)  This statement can be construed as a motion for a jury instruction on potential lesser included offenses, albeit not the offenses of manslaughter or involuntary manslaughter.  Though technically the statement was not made by Norman's counsel, the use of the plural by the co-defendants counsel suggests that such an instruction was sought for all three defendants, Norman included.  After further discussion, the trial court declined to give an instruction on reckless or negligent homicide.  (Tr. 1428, 1433.)  The offenses of voluntary and involuntary manslaughter were not discussed.

30

Pursuant to Ohio R.C. § 2903.03(A), voluntary manslaughter is defined as follows:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another ....

Pursuant to Ohio R.C. § 2903.03(A), involuntary manslaughter is defined as either of the following:

(A) No person shall cause the death of another ... as a proximate result of the offender's committing or attempting to commit a felony.[9]

(B) No person shall cause the death of another ... as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor.

Under Ohio law, "[although] an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Conway*, 108 Ohio St. 3d 214, 842 N.E.2d 996, 2006-Ohio-791 at ¶42 (Ohio 2006), *quoting State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus; *see also State v. Smith*, 89 Ohio St.3d 323, 331, 2000-Ohio-166, 731 N.E.2d 645 (Ohio 2000) (in making such a determination, the court must

---

[9] Felony as used herein does not include first or second degree felonies of violence as these are elements of felony murder under which Norman was convicted. *Compare* Ohio R.C. § 2903.02(B).

31

view the evidence in a light most favorable to defendant); *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (Ohio 1980).  As the Ohio Supreme Court explained, "[i]f the evidence adduced on behalf of the defense is such that if accepted by the trier it would constitute a complete defense to all substantive elements of the crime charged, the trier will not be permitted to consider a lesser included offense for the reason that an unreasonable compromise would be invited on the state's evidence."  *State v. Nolton*, 249 N.E.2d 797, 798-99, 19 Ohio St. 2d 133, 135 (Ohio 1969).

Norman's trial counsel did not render ineffective assistance of counsel as the trial court, following Ohio law, would have been compelled to deny Norman's request for the voluntary and involuntary manslaughter instructions as a matter of law.  Using the language of the *Conway* court, a charge on a lesser included offense would have been required ***only*** where the evidence presented at trial reasonably could have supported Norman's acquittal on the charge of felony murder and a conviction upon either voluntary or involuntary manslaughter.  *Conway*, 2006-Ohio-791 at ¶42.  Simply put, if the jury, based on the evidence presented, could have believed Norman and his co-defendants' fired their weapons in self-defense (thereby finding in their favor on the charge of felony murder), it would have been inappropriate to instruct the jury on a lesser included charge.

In addition, the evidence presented at trial could not reasonably have supported a conviction for voluntary manslaughter, as not a shred of evidence was proffered that Norman or his co-defendants' shooting spree was "brought on by serious provocation occasioned by the victim."  With respect to involuntary manslaughter, the evidence at trial was not amenable to a finding that Norman or his co-defendants were committing or attempting to commit a non-

32

violent felony, misdemeanor of any degree, a regulatory offense, or a minor misdemeanor.  It is, however, undisputed that all defendants intentionally fired deadly weapons in the direction of the occupants of the white car, actions which a reasonable jury only could find to be either a violent felony of the first or second degree or a privileged use of force in defense of self or others.

> The Sixth Circuit has concluded that:

> [Where] the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law. Accordingly, the circumstances that would induce a federal court to overturn the state court determination would need to be extraordinary, indeed.... Even if we assume that the failure to give a requested lesser included offense instruction could ever be cognizable in a habeas corpus proceeding, such failure clearly does not rise to the level of constitutional error when the failure was correct as a matter of state law.

> Accordingly, since it is not the function of a federal habeas court to correct errors in state law, we would not be warranted in setting aside [petitioner's] conviction except under the most unusual circumstances.  One circuit court of appeals has said that we should not intervene unless failure to give the instruction amounts to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person.  *Nichols v. Gagnon*, 710 F.2d 1267, 1269 (7th Cir. 1983), *cert. denied*, 466 U.S. 940, 104 S. Ct. 1918 (1984).

*Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990), *citing Pilon v. Bordenkircher*, 593 F.2d 264 (6th Cir.), *vacated on other grounds*, 444 U.S. 1, 62 L. Ed. 2d 1, 100 S. Ct. 7 (1979).

Thus, a habeas petition can only be sustained if a failure to include a lesser included offense violates a petitioner's constitutional due process rights.  *Bagby*, 894 F.2d at 797 (failure to instruct on lesser included offenses in noncapital does not amount to a fundamental defect that inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure).  The Constitution, however, does not require a lesser-included

33

offense instruction in non-capital cases.  *See Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.

2001) ("A lesser included offense instruction is therefore not required when the evidence does

not support it, nor is the instruction mandated when it is precluded by a procedural bar ....");

*Tegeler v. Renico*, 2006 U.S. Dist. LEXIS 58555 at *25 (E.D. Mich. 2006).  Thus, even

assuming an instruction on either variety of manslaughter was appropriate, the absence of such

an instruction in Norman's case does not rise to a constitutional violation.

For the foregoing reasons, Norman's claim of ineffective assistance of appellate counsel

is without merit.

### V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Norman's Petition for Writ

of Habeas Corpus (Doc. No. 1) be DENIED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: September 26, 2006

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**